UNITED STATES DISTRICT COURT                    <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
THREE HEADED PRODUCTIONS, INC., TIMOTHY
LORITO, and CANZACITI INTERNATIONAL, INC.,

                                        Plaintiffs,          **MEMORANDUM & ORDER**
                                                             22-CV-00247 (JMA) (AYS)


                    -against-


STEER VEND, INC., JAMES PASTIER, PAUL
PASTIER, and VICTORIA LINSCOTT,

                                        Defendants.
-----------------------------------------------------------------------X
**AZRACK, United States District Judge:**

 Presently before the Court are Defendants' motion for attorney's fees, costs, and sanctions

following the dismissal of Plaintiffs' case for failure to prosecute; Magistrate Judge Anne Y.

Shields's July 16, 2024, Report and Recommendation ("R&R") on Defendants' motion; and

objections filed by certain parties.  (<u>See</u> ECF Nos. 20, 22, 25-27.)  As set forth below, the Court

REJECTS the R&R, GRANTS IN PART and DENIES IN PART Defendants' motion, and

GRANTS Defendants' request for subsequent briefing to determine the amount of attorney's fees

and costs owed to them.

## I.  BACKGROUND

 The facts set forth herein are undisputed.

### A.  <u>The 2013 Westbury CANZ Restaurant Sale</u>

 In December 2013, Defendant Paul Pastier ("Pastier"), through his company, Defendant

Steer Vend, Inc. ("Steer Vend"), purchased from Plaintiffs Timothy Lorito ("Lorito") and

Canzacati International ("Canz Int'l" and together with Lorito, "Original Plaintiffs") a Westbury,

New York restaurant that operated under the name CANZ.  (<u>See</u> Pastier Decl., ECF No. 20-2 ¶¶ 2-

4.)  The sale did not include any restriction on the use of the name CANZ, concern a license or

royalties for use of the name CANZ, or include quality control measures concerning the name

CANZ.  (Id.)  The parties did not communicate after the sale, and the restaurant ran independently of any feedback or control from Original Plaintiffs.  (See id.)

**B.**      **Plaintiffs' Non-Use of CANZ or Similar Marks and the Related Expiration of Their Registered Trademarks**

Original Plaintiffs last used CANZ or similar marks for a Patchogue, New York restaurant that has been closed since 2014.  (Id. ¶ 8; see Shravah Decl. Ex. A ("Compl."), ECF No 20-4 ¶¶ 1-3.)  Plaintiff Three Headed Productions Inc. ("THP") last used CANS or similar marks for a Bucktown, Illinois restaurant that closed in 2013.  (Pastier Decl., ECF No. 20-2 ¶ 16; see Shravah Decl. Ex. L, ECF No. 20-15.)  THP was an Illinois company until it dissolved the following year, in June 2014.  (Shravah Decl. Ex. K, ECF No. 20-14.)

Plaintiffs previously held several relevant registered trademarks.  THP held registrations for "Cans" and "Cans and Design" for bar and restaurant services or apparel.  (Shravah Decl. Ex. H ("Am. Compl."), ECF No. 20-11 ¶¶ 10-12 (providing U.S. Trademark registration numbers 2,937,345; 3,437,844; and 4,496,978).)  THP licensed those marks to Lorito beginning in 2013 ("THP License Agreement").  (State Ct. R. Part 1, ECF No. 1-2 at 26-47.[1])  Lorito held registrations for "DO YOU HAVE A CRUSH ON OUR CANZ," "CANZTRUCTION & Design," and "CANZACITI ROADHOUSE" for bar and restaurant services.  (Am. Compl., ECF No. 20-11 ¶¶ 16-18 (providing U.S. Trademark registration numbers 4,157,957; 4,157,923; and 3,905,692).)

Those registrations were cancelled between 2015 and 2020 (depending on the given mark) because the "registrant did not file an acceptable declaration under Section 8."  Trademark Status & Document Retrieval, U.S. Pat. & Trademark Off., https://tsdr.uspto.gov/ (enter "2,937,345"; "3,437,844"; "4,496,978"; "4,157,957"; "4,157,923"; or "3,905,692" next to "US Serial,

---

[1]      Pinpoint citations to the state court record refer to the continuous pages within the cited ECF filing.

Registration, or Reference No." and click "Status") (last visited Aug. 28, 2024); <u>see also</u> <u>Kid Car NY, LLC v. Kidmoto Techs. LLC</u>, 518 F. Supp. 3d 740, 752 (S.D.N.Y. 2021) (explaining that Fed. R. Evid. 201(b)(2) allows the Court to take judicial notice of official records from that electronic search system). Those declarations must confirm how the given mark has continued to be used in commerce. <u>See</u> 15 U.S.C. § 1058(b)(1); <u>see also</u> <u>id.</u> § 1058(b)(2) (requiring a mark owner to alternatively show that "nonuse is due to special circumstances which excuse such nonuse and is not due to any intention to abandon the mark"). "[T]he purpose of [this requirement] is 'to remove from the register automatically marks which are no longer in use.'" <u>In re Bose Corp.</u>, 580 F.3d 1240, 1246 (Fed. Cir. 2009) (quoting <u>Torres v. Torresella</u>, 808 F.2d 46, 48 (Fed. Cir. 1986)).

**C.    Steer Vend Registered the CANZ Trademark and Planned to Open a Bohemia Restaurant**

Around the end of 2019, Pastier began planning to open, through Steer Vend, another CANZ location in Bohemia, New York. (Pastier Decl., ECF No. 20-2 ¶ 5.) The opening was delayed because of the COVID-19 pandemic. (<u>Id.</u>) In 2020, Steer Vend applied to register the mark CANZ. (<u>Id.</u> ¶ 7.) That application was granted. Since September 2021, Steer Vend has owned U.S. Trademark Registration No. 6,485,301 over the mark "CANZ" for "restaurant and bar services, including restaurant carryout services." (<u>Id.</u>; State Ct. R. Part 2, ECF No. 1-3 at 49.)

**D.    The Complaint and Temporary Restraining Order**

In November 2021, Steer Vend was "ready to open" the Bohemia CANZ restaurant. (Pastier Decl., ECF No. 20-2 ¶ 6; <u>see id.</u> (explaining that waitstaff, cooks, and bartenders were hired for the Bohemia location).) But then Original Plaintiffs, through their counsel Jeremy M. Iandolo ("Iandolo"), filed the Complaint asserting breach of fiduciary duty and unjust enrichment claims against Defendants in New York Supreme Court, Nassau County for damages and injunctive relief. (<u>See</u> ECF No 20-4.) Original Plaintiffs also filed a motion for temporary

restraining order and a preliminary injunction to prevent Defendants from using the name CANZ. (ECF No. 20-5.)  Original Plaintiffs asserted that they licensed from THP "the exclusive use of [THP's] trademarked name CANZ" and authorized Defendants to use the name CANZ only at the Westbury restaurant consistent with the THP License Agreement.  (Compl., ECF No 20-4 ¶¶ 4-7; see Shravah Decl. Ex. B ("Inj. Mot."), No. 20-5 at 2-3.)  Original Plaintiffs insisted that Defendants' use of the name CANZ at the Bohemia restaurant would expose Original Plaintiffs to liability to THP for breaching the THP License Agreement.  (Compl., ECF No 20-4 ¶ 12; Inj. Mot., ECF No. 20-5 at 2.)  The Complaint further contended that Defendants' Bohemia restaurant would cause harm because Original Plaintiffs were opening a CANZ restaurant "a short distance away in Patchogue," New York. (ECF No. 20-4 ¶ 13; see Inj. Mot., ECF No. 20-5 at 2.)  To support that assertion, Original Plaintiffs submitted a ten-year lease agreement for 18 Railroad Avenue in Patchogue ("Lease").  (Shravah Decl. Ex. C, ECF No. 20-6.)  The Lease reportedly had been running since September 2021, two months before Original Plaintiffs filed suit.  (Id.)

Before receiving a response from Defendants, the state court issued a Temporary Restraining Order that prevented Defendants from opening the Bohemia restaurant and from using the name CANZ in any form.  (ECF No. 20-7.)  Defense counsel then reported to Iandolo that the relevant trademarks had expired; Iandolo responded that he was not aware of that fact.[2]  (See Shravah Decl., ECF No. 20-3 ¶ 15.)  In addition, Defense counsel learned that, though the Lease

---

[2]     The Court treats Iandolo's statements as non-hearsay by a party opponent under Fed. R. Evid. 801(d)(2) because he is a respondent to the sanctions motion and was also an agent of Original Plaintiffs.  The Court would consider that statement even if it were hearsay.  The Court may apply relaxed evidentiary rules for a sanctions motion, so long as the Court does so "even-handedly."  Jensen v. Phillips Screw Co., 546 F.3d 59, 66 n.5 (1st Cir. 2008); see Cook v. Am. S.S. Co., 134 F.3d 771, 775 (6th Cir. 1998) (rejecting argument that the Federal Rules of Evidence apply when considering sanctions); accord Royal Park Invs. SA/NV v. United States Bank Nat'l Ass'n, 349 F. Supp. 3d 298, 307 (S.D.N.Y. 2018) (holding that a sanctions order permissibly considered facts that would not be admissible under the Federal Rules of Evidence).  Furthermore, neither Original Plaintiffs nor Plaintiffs' Counsel objected to the admissibility of any of the evidence Defendants submitted with their motion.

reportedly began two months earlier, an herbal medicine store was operating at the Patchogue location where Original Plaintiffs were supposedly opening their new restaurant.  (See Shravah Decl. Ex. E, ECF No. 20-8.)  Iandolo later confirmed that Original Plaintiffs were not using the name CANZ in Patchogue.  (See id.)

Defendants filed a letter reporting these circumstances to the state court.  (Id.)  The state court then vacated the Temporary Restraining Order.  (ECF No. 20-9.)  The next day, attorney Panagiota Betty Tufariello ("Tufariello" and together with Iandolo, "Plaintiffs' Counsel") filed a notice of appearance for Original Plaintiffs.  (See State Ct. R. Part 2, ECF No. 1-3 at 53-54.)

## E.    Pastier's Visit to the Patchogue Lease Location

In December 2021, Pastier visited the address identified in the Lease.  (Pastier Decl., ECF No. 20-2 ¶ 9.)  Pastier confirmed that an herbal medicine store occupied the building.  (Id.; see id. at 6 (showing a photograph Pastier took of the building).)  Pastier entered the store and purchased an item.  (Id. ¶ 9; see id. at 5 (showing Pastier's receipt for a December 2021 purchase from Organically Connected at 18 Railroad Avenue in Patchogue).)  The cashier stated that "the business is not moving or closing" and the business "ha[d] no plans to shut the store down."[3]  (Id. ¶ 9.) "There was no construction or any type of renovation at that time to convert th[e location] into a restaurant."  (Id. ¶ 9.)  The location had no kitchen and no bar.  (Id.)  In fact, "[b]ased on [his] experience opening restaurants," including his familiarity with the "architectural plans," "permits," and other municipal "applications" required to open a restaurant, Pastier concluded that the building "did not have any type of space or capability to fit a kitchen or bar."  (Id.)  Defendants

---

[3]    The Court may consider this hearsay statement on a motion for sanctions.  See Jensen, 546 F.3d at 66 n.5; Cook, 134 F.3d at 775; Royal Park Invs. SA/NV, 349 F. Supp. 3d at 307.  The Court accepts this statement because Pastier's Declaration attaches a receipt for his purchase in the store, a brochure he took from the store, and a photograph he took of the building (Pastier Decl., ECF No. 20-2 at 5-8)—all "indicia of reliability" that Pastier had this conversation with the cashier.  Sentis Grp., Inc. v. Shell Oil Co., 559 F.3d 888, 901 (8th Cir. 2009).

informed the state court and Plaintiffs' Counsel of these circumstances in December 2021.  (See State Ct. R. Part 2, ECF No. 1-3 at 77-82.[4])  The herbal medicine store still operates at the Lease location.  (See Pastier Decl., ECF No. 20-2 ¶ 10.)

**F.      The Amended Complaint and Supplemental Preliminary Injunction Motion**

In January 2022, Tufariello filed an Amended Complaint on behalf of Plaintiffs, whereby THP reportedly joined the case.  (ECF No. 20-11.)  The Amended Complaint asserted for the first time (among other things) federal Lanham Act and state trademark claims.  (Id. ¶¶ 61-75.)  To that end, it asserted that Plaintiffs own "all rights, title, and interest in and to" their formerly registered trademarks concerning Cans or CANZ and "Plaintiffs use[d] and promot[ed]" those marks "in interstate commerce since 2002."  (Id. ¶¶ 10-21.)  THP reportedly "has been using the mark CANS and CANS & Design anywhere and in interstate commerce, in connection with bar and restaurant services . . . since at least August 1, 2002."  (Id. ¶ 14.)  Likewise, all Plaintiffs confirmed that they "have used and continue to use their service marks CANS, CANZ, and CANZACITY ROADHOUSE" for "restaurant and bar services, including restaurant carryout services."  (Id. ¶ 40 (emphasis added).)  Plaintiffs reasserted that Original Plaintiffs entered the Lease to open a new CANZ location in Patchogue.  (See id. ¶ 45.)  Plaintiffs also alleged that Defendants (1) were aware of the THP License Agreement, (2) sub-licensed the CANZ mark from Original Plaintiffs for use only at the Westbury location, and (3) were impermissibly using the CANZ name at the Bohemia location.  (Id. ¶¶ 19, 26-27, 30.)  Tufariello also filed a supplemental preliminary injunction motion that mirrored the Amended Complaint's allegations.  (See ECF No 20-12.)

---

[4]      Because the cited pages in the document appear blurry, the Court notes that a more legible copy of the document is available at NYSCEF document number twenty-four in the parties' state court case, Timothy Lorito et al v. Steer Vend Inc. et al., No. 613900/2021 (N.Y. Sup. Ct., Nassau Cnty.).

G.      **Removal to Federal Court and Dismissal of the Case**

 Defendants removed the case to this court based on the new federal trademark claims and filed a letter motion for limited discovery to respond to Plaintiffs' preliminary injunction motion. (ECF Nos. 1, 6.)  In doing so, Defendants contended that (among other things) Plaintiffs could not prove they were using the CANZ mark or any similar mark in commerce, and Plaintiffs could not produce any license or sub-license agreement with Defendants or produce related quality control measures concerning the disputed marks.  (Id.)  After the Court directed the parties to identify their current use in commerce of the disputed marks, (June 9, 2022, Status Report Order), Plaintiffs admitted that they "have yet to begin operation of a restaurant named CANZ or CANS."  (ECF No. 10.)  The Court granted Defendants' motion for discovery.  (Sept., 27, 2022, Order.)

Defense counsel served discovery requests, including interrogatories, document requests, and deposition notices.  (See Shravah Decl., ECF No. 20-3 ¶ 14.)  Plaintiffs ignored them.  (Id.)  The Court directed Plaintiffs to file a status report three times over two months.  (See Status Report Orders dated Mar. 1, 2023, Mar. 13, 2023, and Apr. 14, 2023.)  Plaintiffs ignored those court orders.  Following over 320 days of the parties' silence on the docket, including Plaintiffs' three failures to provide court-ordered status reports, the Court dismissed this case for failure to prosecute.  (May 4, 2023, Order Dismissing Case.)

H.      **The Cancellation Proceeding**

While this case was pending, Tufariello commenced a proceeding on behalf of THP against Steer Vend before the Unites States Patent and Trademark Office's Trademark Trial and Appeal Board ("TTAB") to cancel Steer Vend's CANZ trademark ("Cancellation Proceeding").  (Shravah Decl. Ex. J., ECF No. 20-13.)  TTAB suspended that proceeding pending resolution of this case.

(Id.) After the Court dismissed this case for failure to prosecute, TTAB similarly dismissed the Cancellation Proceeding because THP failed to respond to TTAB orders.  (Id.)

I.   **Defendants' Motion for Attorney's Fees, Sanctions, and Costs**

Defendants requested, pursuant to the undersigned's Individual Rules, a pre-motion conference regarding the instant motion for attorney's fees and sanctions.  (ECF No. 13.)  Plaintiffs opposed that request.  (ECF No. 14.)  The Court waived its pre-motion conference requirement, directed the parties to submit a proposed briefing schedule, and so-ordered the parties' proposed briefing schedule.  (July 20, 2023, Order; July 31, 2023, Sched. Order; see also Oct. 11, 2023, Order (extending briefing schedule at Defendants' request).)

Plaintiffs failed to timely oppose the motion.  (See ECF No. 17 (reporting that Plaintiffs served no opposition).)  Seventeen days after their brief was due, Plaintiffs requested more time to file an opposition.  (See ECF No. 18.)  Notwithstanding that request's untimeliness, the Court granted Plaintiffs the additional eleven days they sought.  (See Dec. 13, 2023, Order.)  Plaintiffs thereafter requested even more time to oppose the motion, seeking thirty additional days so they could "finally get everything done."  (ECF No. 19.)  The Court granted the request and warned that motions to further extend the briefing schedule would be denied. (See Dec. 22, 2023, Order.)

Defendants filed their motion in February 2024.  (ECF No. 20.)  The motion sought (1) attorney's fees under the Lanham Act, 15 U.S.C. § 1117(a), from Plaintiffs and Plaintiffs' Counsel, (2) sanctions under Federal Rule of Civil Procedure ("Rule") 11 against Plaintiffs' Counsel, (3) attorney's fees as a sanction under 28 U.S.C. § 1927 against Plaintiffs' Counsel, and

(4) costs under Rule 54(d)(1) or § 1117(a) from Plaintiffs and Plaintiffs' Counsel.[5]   (ECF No. 20-1.)  Defendants also filed a letter confirming that Plaintiffs failed to serve any opposition—even though Plaintiffs had Defendants' brief for nearly 100 days.  (See ECF No. 21.)  The Court referred the unopposed motion to Judge Shields for a report and recommendation.  (Apr. 16, 2024, Order Referring Motion.)

Judge Shields scheduled a July 2024 conference.  (May 7, 2024 Sched. Order.)  At the conference, Tufariello appeared reportedly only for herself and Iandolo.  (See July 16, 2024, Conf. FTR Log ("FTR") 1:40:14-1:42:03; 1:48:08-1:48:27.)  Tufariello disclaimed any appearance on behalf of Plaintiffs—even though, as she acknowledged, Tufariello and Iandolo are still Plaintiffs' counsel of record and had not sought to withdraw.  (FTR 1:40:14-1:42:03; 1:48:08-1:48:27.)  Tufariello acknowledged the failure to oppose Defendants' motion even after the Court granted Plaintiffs' requests for extensions of time to do so.  (FTR 1:55:52-1:56:13.)  Tufariello explained that Plaintiffs and their counsel "did not respond in any way" to Defendants' motion "because of conversations that we had and instructions that we had received from our client[s]."  (FTR 1:49:15-1:49:30.)  Tufariello refused to further explain that decision, stating she was "hard pressed to be able to share in open court the reasons behind our client[s'] instructions."  (FTR 1:49:48-1:50:03.)  Tufariello similarly admitted she received Defendants' discovery requests but ignored them based on instructions from her clients.  (FTR 1:54:12-1:54:42.) Addressing the substance of Defendants' motion, Tufariello disclaimed any involvement with drafting Plaintiffs' "initial filings" and insisted that only Iandolo had "the opportunity to verify or confirm" the statements in those documents.

---

[5]     Defendants' brief twice references in passing that the Court has the inherent power to impose sanctions. (ECF No 20-1 at 12, 18.)  Inherent power is a separate sanctions authority.  See, e.g., Enmon v. Prospect Capital Corp., 675 F.3d 138, 144 (2d Cir. 2012). Given that Defendants' brief only twice mentions inherent power in passing and outside of its "fees and sanctions" argument, the Court concludes that Defendants do not seek relief under the Court's inherent power. (ECF No. 20-1 at 22-23 (initial capitalizations omitted).)  Defendants' objections to the R&R confirm this conclusion.  (See ECF No. 26 at 2 (confirming that the motion seeks sanctions under only Rule 11 and § 1927).)

9

(FTR 1:50:44-1:51:14.) Tufariello further explained that when she "took the case over" she "confirmed that the trademarks" previously held by her clients "were abandoned" and that she knew she was "prosecuting a case on behalf of abandoned trademarks" in 2021. (FTR 1:51:32-1:51:58.) Nonetheless, Tufariello contended that she "checked to see if" the marks "are still in use" and determined that "at least" THP maintained rights in the marks because it "had in fact been using" them. (FTR 1:52:14-1:52:36.) Tufariello also "determined" early on that Original Plaintiffs used the marks under the THP License Agreement and there was "not a written" but a "verbal" sub-license agreement between Original Plaintiffs and Defendants. (FTR 1:52:39-1:53:27; see also State Ct. R. Part 2, ECF No. 1-3 at 24 (affidavit of Joseph Rubostello in support of Original Plaintiffs' injunction motion reporting that the sub-license agreement was verbal).)

Judge Shields issued the R&R after the conference. (See ECF No. 22.) The R&R recommended imposing Rule 11 sanctions in a to-be-determined amount for "Plaintiffs' counsels' actions before the Court with regard to the instant motion." (Id.) As Judge Shields explained on the record, "the sanctionable conduct is not responding to the motion in any way nor seeking to have any extension of time . . . and not showing up to argue the motion in any way" until the conference. (FTR 2:09:12-2:09:33; see FTR 2:08:36-2:09:11 (stating that the Court should "grant Rule 11 sanctions against the lawyers in this case for failure to comply with" the briefing schedule for Defendants' motion).) Given that Tufariello disclaimed representing Plaintiffs at the conference, Judge Shields recommended that Defendants' requests for attorney's fees under the Lanham Act and for sanctions under 28 U.S.C. § 1927 be denied without prejudice so that the Court could hold a hearing if those requests were renewed. (See ECF No. 22; FTR 2:09:33-2:09:51.) Judge Shields did not address Defendants' request for costs.

Plaintiffs' Counsel and Defendants timely objected to the R&R. (ECF Nos. 25-27.)

## II.    LEGAL STANDARD

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see FED. R. CIV. P. 72(b)(3) (similar). In reviewing a magistrate judge's report and recommendation, a court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made." 28 U.S.C. § 636(b)(1)(C) (emphasis added); see FED. R. CIV. P. 72(b)(3); United States ex rel. Coyne v. Amgen, Inc., 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), aff'd, 717 F. App'x 26 (2d Cir. 2017). By contrast, those portions of a report and recommendation to which there is no specific reasoned objection are reviewed for clear error. See, e.g., Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008). Clear error lies only where, after examining the record, the Court is "left with the definite and firm conviction that a mistake has been committed." Cooper v. Harris, 581 U.S. 285, 309 (2017) (internal quotation marks omitted). Additionally, "the district court 'will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" Fossil Grp., Inc. v. Angel Seller LLC, 627 F. Supp. 3d 180, 186-87 (E.D.N.Y. 2022) (quoting United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019)). Such arguments "may not be deemed objections at all." Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal quotation marks omitted).

## III.    DISCUSSION

As set forth herein, the Court rejects each of the R&R's conclusions, adjudicates Defendants' motion de novo, and GRANTS IN PART and DENIES IN PART Defendants' motion.

**A.** <u>**The R&R Seeks to Impose Impermissible Rule 11 Sanctions**</u>

The undersigned rejects the recommendation that the Court grant Defendants' motion (in part) by imposing Rule 11 sanctions based on Plaintiffs' Counsel's failure to oppose the motion. (<u>See</u> ECF No. 22; FTR 2:08:36-2:09:33.)  For the following reasons, even under the more lenient clear error standard of review, the Court is "left with the definite and firm conviction that a mistake has been committed" in the R&R.  <u>Cooper</u>, 581 U.S. at 309 (internal quotation marks omitted).

"[P]rinciples of due process and Rule 11 itself" require that "the subject of a sanctions motion 'must receive specific notice of the conduct alleged to be sanctionable.'"  <u>StreetEasy, Inc. v. Chertok</u>, 752 F.3d 298, 310 (2d Cir. 2014) (quoting <u>Ted Lapidus, S.A. v. Vann</u>, 112 F.3d 91, 97 (2d Cir. 1997)); <u>see</u> Fed. R. Civ. P. 11(c)(2).  As a result, "[o]nly conduct explicitly referred to" in the motion may be sanctioned.  <u>StreetEasy</u>, 752 F.3d at 310 (internal quotation marks omitted). Defendants' motion does not seek sanctions for the then-unknown future failure to oppose it. Instead, it seeks sanctions because Plaintiffs' Counsel misrepresented facts and brought improper claims prior to the filing of the Rule 11 motion.  (<u>See</u> ECF No. 20-1 at 22-23.)  The Court rejects the Rule 11 portion of the R&R because the Court cannot sanction conduct beyond that specified in the motion.  <u>See</u> <u>StreetEasy</u>, 752 F.3d at 310-11; <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370, 389 (2d Cir. 2003); <u>Vann</u>, 112 F.3d at 97.

Moreover, courts cannot rely on Rule 11 to sanction a failure to oppose a motion.  Rule 11 "deter[s] baseless filings."  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990).  That is, "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any <u>papers filed</u> with the court are well grounded in fact, and legally tenable." <u>Park v. Kim</u>, 91 F.4th 610, 614 (2d Cir. 2024) (quoting <u>Cooter</u>, 496 U.S. at 393) (brackets omitted; emphasis added).  Consequently, "Rule 11 sanctions are proper *only* in situations involving a

12

signed [filing]." Landon v. Hunt, 938 F.2d 450, 453 (3d Cir. 1991) (internal quotation marks omitted). Sanctions for delay should instead "be dealt with under Rule 16, Rule 36, or Rule 56, rather than under Rule 11." Chipanno v. Champion Int'l Corp., 702 F.2d 827, 831 (9th Cir. 1983); accord Martin v. Giordano, 185 F. Supp. 3d 339, 359 (E.D.N.Y. 2016) (addressing sanctions for failing to appear under Rule 16 and separately from the request for sanctions under Rule 11). Thus, Rule 11 sanctions cannot be imposed for the reason provided in the R&R: failing to timely oppose a motion. Simpson v. Welch, 900 F.2d 33, 36-37 (4th Cir. 1990); see Media Duplication Servs., Ltd. v. HDG Software, Inc., 928 F.2d 1228, 1241 (1st Cir. 1991) (vacating Rule 11 sanctions imposed for ignoring case management orders); Landon, 938 F.2d at 453 (vacating Rule 11 sanctions imposed for failing to appear at trial); accord Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002) (explaining that Rule 11 requires an improper filing).

**B.    The Rule 11 Motion was Procedurally Improper**

A district court deciding a Rule 11 motion "must adhere to the procedural rules which safeguard due process rights." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 58 (2d Cir. 2000); see Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002). One such procedural safeguard requires a Rule 11 sanctions motion to "be made separately from any other motion . . . ." Fed. R. Civ. P. 11(c)(2). Compliance with this requirement should be confirmed even where not contested. See Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 176 (2d Cir. 2012) (independently assessing whether a Rule 11 motion was separately made where that issue was not in dispute); see also Intravaia v. Rocky Point Union Free Sch. Dist., 919 F. Supp. 2d 285, 296 (E.D.N.Y. 2013) (explaining that district courts "lack the authority" to waive the requirement that Rule 11 sanctions motions be separately made). Defendants' motion, however, sought sanctions under Rule 11 alongside three other motions:

(1) for attorney's fees under the Lanham Act, (2) for sanctions under 28 U.S.C. § 1927, and (3) for costs under Rule 54(d)(1) or the Lanham Act.  (ECF No. 20.)  That Defendants included other motions in their Rule 11 motion means they "failed to comply with the procedural requirements of the rule."  Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008).  As such, Defendants' Rule 11 motion must be denied.  See id.; Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir. 2002); Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd., 327 F. Supp. 3d 673, 689 (S.D.N.Y. 2018).

**C.    The R&R Erroneously Concluded that a Hearing is Necessary to Adjudicate the Motion for Attorney's Fees and Sanctions**

The R&R determined that the Court should deny without prejudice the motion for attorney's fees under the Lanham Act and sanctions under 28 U.S.C. § 1927 to hold a hearing on those motions.  (See ECF No. 22; FTR 2:09:33-2:09:51.)  Defendants object to this conclusion, arguing that no hearing is necessary because the motion is unopposed.  (See ECF No. 26 at 3.)  The Court agrees with Defendants that a hearing is unnecessary here.

 "[A] motion for sanctions does not automatically require an evidentiary hearing." Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 138 (2d Cir. 2023) (citing Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 335-36 (2d Cir. 1999)).  Imposing sanctions instead requires "adequate notice and an opportunity to be heard."  Shepherd v. Annucci, 921 F.3d 89, 97 (2d Cir. 2019) (citing Schlaifer, 194 F.3d at 334).  "[T]he opportunity to submit written briefs may be sufficient to provide an opportunity to be heard."  Schlaifer, 194 F.3d at 335; see International Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1286 (2d Cir. 1994) (holding appellant that failed to respond to the motion for sanctions had an adequate opportunity to be heard because it could have opposed the motion).  Plaintiffs and Plaintiffs' Counsel had an opportunity to be heard given all the extensions of the briefing schedule—including the last two extensions they

14

requested and received but flouted.  See supra Section I.I.  There is no need for a hearing because Plaintiffs and Plaintiffs' Counsel had the opportunity to, but did not, oppose the motion.[6]  See Schlaifer, 194 F.3d at 335; Int'l Ore, 38 F.3d at 1286-87; see also New York v. Hill, 528 U.S. 110, 115 (2000) (explaining that a party is bound by its counsel's pursuit or non-pursuit of arguments); Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962) (holding that each party is bound by its attorney's acts and is deemed to know all facts chargeable to that attorney).

By the same token, the Court sees no need for a hearing on Defendants' unopposed request for attorney's fees under the Lanham Act.  See Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111-12 (2d Cir. 2012) (affirming award of attorney's fees under the Lanham Act granted without a hearing based on undisputed facts); Nike, Inc. v. Already, LLC, 663 F.3d 89, 99 (2d Cir. 2011) (affirming refusal to hold a hearing on a motion for attorney's fees under the Lanham Act).

## D.    Attorney's Fees as Sanctions Under 28 U.S.C. § 1927

Defendants seek attorney's fees from Plaintiffs' Counsel as a sanction pursuant to 28 U.S.C. § 1927.  (ECF No. 20-1 at 22.)  That statute provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  § 1927.  Imposing attorney's fees as a sanction requires an explicit finding of bad faith. Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 143 (2d Cir. 2023).  This "requires a district court to determine both that challenged conduct 'was without a colorable basis' and that it was pursued in bad faith."  Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282 (2d Cir. 2021) (quoting Schlaifer, 194 F.3d at 336); see Int'l Techs. Mktg. v. Verint Sys., 991 F.3d 361, 368 (2d Cir. 2021).

---

[6]        Even if a party had requested a hearing at the conference before Judge Shields, that request would have been untimely.  See Schlaifer, 194 F.3d at 335 (affirming refusal to hold a sanctions motion hearing because it was requested "months after the last brief had been filed and well after [appellee] had first moved for sanctions").

For conduct to be without color "it must lack any legal or factual basis."  Liebowitz, 6 F.4th at 282

(citing Schlaifer, 194 F.3d at 337); see Int'l Techs. Mktg., 991 F.3d at 368.  Conduct "motivated

by improper purposes such as harassment or delay" is undertaken in bad faith.  Liebowitz, 6 F.4th

at 282 (quoting Schlaifer, 194 F.3d at 336).  The Second Circuit "require[s] a high degree of

specificity in the factual findings of lower courts upon which sanctions for bad faith are based."

Rossbach, 81 F.4th at 141 (quoting Va. Props., LLC v. T-Mobile Ne. LLC, 865 F.3d 110, 113 (2d

Cir. 2017)).  Bad faith "may be inferred when an action is 'so completely without merit as to

require the conclusion that [it] must have been undertaken for some improper purpose.'"  Int'l

Techs. Mktg., 991 F.3d at 368 (quoting Enmon, 675 F.3d at 143).

**1.  Tufariello Acted in Bad Faith by Purporting to Bring Claims on Behalf of THP**

Defendants assert that Plaintiffs' Counsel acted in bad faith when they impermissibly added

THP, a dissolved entity, as a Plaintiff to assert standing concerning some of the marks at issue.

(ECF No. 20-1 at 15; see id. at 22-23.)  The Court agrees with respect to Tufariello.

"[F]ederal law sets the ground rule that a plaintiff corporation or partnership must have

legal existence to have constitutional standing. Whether a particular corporation or partnership

satisfies that requirement, however, turns on an examination of state law."  Fund Liquidation

Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 386 (2d Cir. 2021); see Marsh v. Rosenbloom,

499 F.3d 165, 177 (2d Cir. 2007) ("[H]ow long and upon what terms a state-created corporation

may continue to exist is a matter exclusively of state power." (quoting Chi. Title & Tr. Co. v. 4136

Wilcox Bldg. Corp., 302 U.S. 120, 127-28 (1937))).  A corporation's legal existence is determined

by the law of the state where the entity was incorporated.  See Fund Liquidation Holdings, 991

F.3d at 386; Marsh, 499 F.3d at 177.

16

THP was an Illinois company that dissolved approximately seven and a half years before Plaintiffs' Counsel purported to bring suit on its behalf.  (See Shravah Decl. Ex. K, ECF No. 20-14 (showing THP dissolved in June 2014).)  Illinois law specifies that dissolved entities lose their legal existence five years after dissolution.  805 Ill. Comp. Stat. 5/12.80.  "After this five-year period, the corporation can neither sue nor be sued."  Sharif v. Int'l Dev. Grp. Co., 399 F.3d 857, 860 (7th Cir. 2005) (quoting Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co., 629 F.2d 1183, 1185 (7th Cir. 1980)) (brackets omitted).  Thus, THP "had only five years after its dissolution," or until June 2019, "to bring any remaining claims."  Williams v. Bd. of Educ. of Chi., 506 F. App'x 517, 519 (7th Cir. 2013); see also Chi. Title & Tr., 302 U.S. at 129 (applying this principle using the predecessor statute's two-year post-dissolution existence period).  Yet Tufariello purported to bring this case on behalf of THP by filing the Amended Complaint in January 2022, approximately two and a half years after THP's legal existence ceased.  (ECF No. 20-11.)  Those claims were colorless for lacking "any legal . . . basis" given THP's inability to maintain suit.  Liebowitz, 6 F.4th at 282.

The Amended Complaint indicates that Tufariello was aware of THP's nonexistence when she first purported to bring suit on its behalf.  On one hand, the Amended Complaint described all parties—other than THP—without qualification, including that Plaintiff Canz Int'l and Defendant Steer Vend were existing corporations.  (ECF No. 20-11 ¶¶ 1-2, 4-7.)  On the other hand, Tufariello attempted to limit the assertion that THP was still "existing under the laws of the State of Illinois" by adding the qualification that this allegation was made only "[u]pon information and belief."  (Id. ¶ 3.)  Alleging the existence of a plaintiff "[u]pon information and belief" is improper.  See Citizens United v. Schneiderman, 882 F.3d 374, 384-85 (2d Cir. 2018) (explaining that those "magic words" are appropriate only "when 'the facts are peculiarly within the possession and

17

control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible'" (quoting <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010))).  The Court concludes Tufariello must have raised the claims on behalf of THP for an improper purpose because she knew THP's years-long nonexistence rendered those claims "so completely without merit."  <u>Int'l Techs. Mktg.</u>, 991 F.3d at 368 (quoting <u>Enmon</u>, 675 F.3d at 143).

### 2.   Tufariello Acted in Bad Faith by Bringing and Maintaining the Trademark Claims Based on False Assertions that Plaintiffs Used the Marks in Commerce

Defendants contend that Plaintiffs' Counsel raised and maintained the trademark claims in bad faith because they knew Plaintiffs had not used the marks in commerce for several years.  (<u>See</u> ECF No. 20-1 at 15-17, 22-23.)  The Court concurs with respect to Tufariello.

In the Amended Complaint Tufariello filed, Plaintiffs asserted as Counts I, II, and III, respectively, a false a designation of origin claim under the Lanham Act, 15 U.S.C. § 1125(a), an unfair competition claim under the same provision of the Lanham Act, and a trademark infringement and unfair competition claim under New York law.  (ECF No. 20-11 ¶¶ 61-75.)  The Court analyzes Counts I-III together because they have substantially similar standards.  <u>See, e.g.</u>, <u>Girl Scouts v. BSA</u>, 597 F. Supp. 3d 581, 594 (S.D.N.Y. 2022); <u>Coty Inc. v. Excell Brands, LLC</u>, 277 F. Supp. 3d 425, 440 (S.D.N.Y. 2017).  Tufariello based those claims on formerly registered but cancelled trademarks.  (ECF No. 20-11 ¶¶ 10-21.)  "§ 1125(a) is a broad federal unfair competition provision which protects unregistered trademarks."[7]  <u>Vox Amplification Ltd v. Meussdorffer</u>, 50 F. Supp. 3d 355, 366 (E.D.N.Y. 2014) (internal quotation marks and brackets omitted); <u>see</u> <u>Time, Inc. v. Petersen Publ'g Co.</u>, 173 F.3d 113, 117 (2d Cir. 1999). "An unregistered mark is entitled to protection under the Lanham Act if it would qualify for registration as a

---

[7]      For this reason, the Court rejects Defendants' assertion that Lanham Act claims were necessarily invalid for being based on unregistered marks.  (<u>See</u> ECF No. 20-1 at 14-15.)

trademark." <u>Star Indus. v. Bacardi & Co.</u>, 412 F.3d 373, 381 (2d Cir. 2005) (citing <u>Courtenay</u> <u>Commc'ns Corp. v. Hall</u>, 334 F.3d 210, 213 n.2 (2d Cir. 2003)).  A mark qualifies for registration if, among other things, "its owner uses it in commerce." <u>Gameologist Grp., LLC v. Sci. Games</u> <u>Int'l, Inc.</u>, 508 F. App'x 31, 32 (2d Cir. 2013) (citing 15 U.S.C. § 1051).

Plaintiffs, however, had not used the marks in commerce for over seven years when Tufariello filed the Amended Complaint that asserted the trademark claims.  <u>See</u> supra Section I.B (explaining that Original Plaintiffs last used relevant marks no later than 2014, and THP last used relevant marks no later than 2013 before dissolving in 2014).  Accordingly, Plaintiffs' trademark claims were colorless for lacking a "factual basis." <u>Liebowitz</u>, 6 F.4th at 282.

The Court concludes that Plaintiffs' Counsel were aware of this circumstance from the start. The Complaint specified that Original Plaintiffs previously owned restaurants in three locations, namely, Patchogue, Westbury, and Astoria, New York, and then sold them all.  (ECF No. 20-4 ¶¶ 1-4.)  The Complaint specified when Original Plaintiffs sold the Westbury restaurant but avoided stating when they sold the Patchogue and Astoria locations—which marked their last use of the CANZ marks.  (<u>Compare</u> <u>id.</u> ¶¶ 4-5, <u>with</u> <u>id.</u> ¶ 3 ("Since Plaintiff has completely sold the locations in Astoria and Patchogue.").)  And nowhere among the laundry list of harms alleged in the Complaint and injunction motion is damage to Original Plaintiffs' ongoing use of CANZ in commerce, such as through direct use of the mark or licensing of it to others. (<u>See</u> Compl., ECF No. 20-4 ¶¶ 12, 15-17; Inj. Mot., ECF No. 20-5 at 2.)

Moreover, just days after this action commenced, defense counsel told Iandolo and filed a letter on the state court docket confirming that the relevant trademarks expired.  (ECF No. 20-8).  As explained above, the publicly available records for the relevant marks confirm that they expired for failure to confirm continued use in commerce.  <u>See</u> <u>supra</u> Section I.B.  This is compounded by

Iandolo's early confirmation, reflected on the docket, that Original Plaintiffs were not using the marks in Patchogue as they claimed.  (ECF No. 20-8.)  Furthermore, one month into this case, Defendants reported to Plaintiffs' Counsel and the state court that "Plaintiffs have not used the mark CANZ in commerce since 2014."  (State Ct. R. Part 2, ECF No. 1-3 at 69.)  Lastly, THP had not even existed for years and as such could not have been using its reported marks.[8]  See supra Section III.D.1.

Tufariello nonetheless filed the Amended Complaint that first asserted Lanham Act and New York trademark claims after Plaintiffs' Counsel knew about Plaintiffs' nonuse of the marks.  (See ECF No.  20-11.)  In doing so, Tufariello falsely asserted that Plaintiffs "continue to use their service marks" in commerce.  (Id. ¶ 40 (emphasis added); see e.g., id. ¶¶ 14-15, 21, 41 (similar); Shravah Decl. Ex. I ("Supp. Inj. Mot."), ECF No 20-12 at 10-12 (similar).)  Based on the above-described circumstances indicating Tufariello knew that they were "so completely without merit," the Court concludes Tufariello raised the trademark claims and assertions of continued use of the marks in commerce for an improper purpose.  Int'l Techs. Mktg., 991 F.3d at 368 (quoting Enmon, 675 F.3d at 143); see Huebner v. Midland Credit Mgmt., 897 F.3d 42, 57 (2d Cir. 2018) (affirming sanctions imposed for initiating a baseless lawsuit for improper purposes).

### 3. Tufariello Acted in Bad Faith by Bringing and Maintaining the Breach of Contract Claim and Related Breach of Fiduciary Duty Claim

Defendants argue that Plaintiffs' Counsel falsely asserted in bad faith that Original Plaintiffs had a valid sub-license agreement with Defendants.  (ECF No. 20-1 at 20.)  The Court agrees as to Tufariello and concludes that she brought in bad faith the breach of contract and breach

---

[8]      Not only had THP long ceased to exist, but the Bucktown, Illinois restaurant where it used the "CANS" mark closed in 2013.  (See Pastier Decl., ECF No. 20-2 ¶ 16; Shravah Decl. Ex. L, ECF No. 20-15.)  The Court is deeply troubled by Tufariello's misrepresentation to Judge Shields that she filed the Amended Complaint after checking that the marks "are still in use" and determining that "at least [THP] . . . had in fact been using the marks."  (FTR 1:52:14-1:52:36.)

of fiduciary duty claims at Counts VII and VIII of the Amended Complaint that are based on the supposed sub-license agreement.  (See ECF No. 20-11 ¶¶ 94-110.)

Tufariello filed the Amended Complaint and supplemental injunction motion that repeatedly alleged that Original Plaintiffs "sub-licensed to Defendants, as per the [THP] License Agreement, the right to use the mark CANZ strictly at their Westbury facility."  (Supp. Inj. Mot., ECF No. 20-12 at 4-5 (emphasis added); see Am. Compl., ECF No. 20-11 at 2-3, ¶¶ 26, 34-36, 41, 98, 105 (similar).)  Even if a verbal sub-license agreement was made as urged by Tufariello, (FTR 1:52:39-1:53:27; contra Pastier Decl., ECF No. 20-2 ¶¶ 2-4), such a sub-license agreement would be invalid.  A cursory review of the THP License Agreement reveals that it forbids a verbal sublicense.  Section 2(c) of the THP License Agreement required any sub-license agreement to be in writing twice over: once between the sub-licensee and Original Plaintiffs, and once between those parties and THP via the form supplemental agreement attached as Exhibit C to the THP License Agreement.  (State Ct. R. Part 1, ECF No. 1-2 at 28, 44-46.)  Defendants' opposition to Original Plaintiffs' injunction motion noted that the THP License Agreement contained a required written form supplemental agreement for sub-licenses.  (See State Ct. R. Part 2, ECF No. 1-3 at 37.)  Yet Tufariello subsequently raised the supposed oral sub-license agreement in the Amended Complaint and supplemental injunction motion.  (Am. Compl., ECF No. 20-11 at 2-3, ¶¶ 26, 34-36, 41, 94-110; Supp. Inj. Mot., ECF No. 20-12 at 4-5, 8.)  Accordingly, the claims and assertions Tufariello filed premised on the supposed oral sub-license agreement are "so completely without merit as to require the conclusion that [they] must have been undertaken for some improper purpose."  Int'l Techs. Mktg., 991 F.3d at 368 (quoting Enmon, 675 F.3d at 143).

**4.   Tufariello Acted in Bad Faith by Relying on the Lease After Defendants Reported its Nonuse and Likely Falsity**

Defendants maintain that Plaintiffs' Counsel acted in bad faith by relying on the Lease after they were informed the Lease was not being used by Original Plaintiffs as they claimed.  (See ECF No. 20-1 at 20-21.)  The Court agrees with respect to Tufariello.

Defense counsel informed Iandolo in November 2021 that an herbal medicine store was operating at the Patchogue Lease location that was then supposedly rented for months by Original Plaintiffs so they could open a new CANZ restaurant.  (Shravah Decl. Ex. E, ECF No. 20-8.) Iandolo was not aware of that fact.   (See Shravah Decl., ECF No. 20-3 ¶ 15.) Iandolo then confirmed that Original Plaintiffs were not operating a CANZ restaurant in Patchogue; this confirmation was memorialized on the docket.  (ECF No. 20-8.)  In December 2021, Defense counsel informed Plaintiffs' Counsel that Pastier visited the herbal medicine store at the Lease address and determined that the location had no bar, lacked a kitchen, was devoid of construction to convert the location into a bar or restaurant, and contained insufficient capacity to become a bar or restaurant.  (See State Ct. R. Part 2, ECF No. 1-3 at 69-70, 77-78.)  Defense counsel also informed Plaintiffs' Counsel that the herbal medicine store's cashier confirmed that the store was neither closing nor moving.  (See id. at 69, 78.)

Despite receiving that information, and without addressing it or Iandolo's prior acknowledgment memorialized on the docket that Original Plaintiffs were not operating a CANZ restaurant in Patchogue, Tufariello filed the Amended Complaint in January 2022 that falsely reasserted that Original Plaintiffs were opening a CANZ restaurant consistent with the Lease. (ECF No. 20-11 ¶ 45.)  That assertion was "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose."  Int'l Techs. Mktg., 991 F.3d at 368 (quoting Enmon, 675 F.3d at 143).

22

**5.   Plaintiffs' Counsel's Failure to Oppose the Sanctions Motion Bolsters the Court's Findings of Bad Faith**

Defendants asserted throughout their motion that Plaintiffs' Counsel acted in bad faith with a specific improper purpose: to "extort" an unwarranted license fee.  (ECF No. 20-1 at 1, 6, 15.)  The Court agrees as to the above-described conduct by Tufariello.  The failure by Plaintiffs' Counsel to oppose the motion, particularly given that they received the extensions of time they requested, (Orders dated Dec. 13, 2023, and Dec. 22, 2023), buttresses that conclusion.  See Palmer v. Cty. of Nassau, 977 F. Supp. 2d 161, 167 (E.D.N.Y. 2013) (accepting sanctions motion's allegations of bad faith based on the failure to oppose them); Royal Indian Raj Int'l Corp. v. Domains by Proxy, Inc., No. 08-CV-3445, 2011 WL 2946367, at *3 (S.D.N.Y. July 20, 2011) (same); accord Law Funder, L.L.C. v. Munoz, 924 F.3d 753, 759 (5th Cir. 2019) (holding that the failure to oppose the sanctions motion forfeited challenges to the Court's findings of bad faith); Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP, 362 F.3d 810, 813 (D.C. Cir. 2004) (affirming sanctions for plaintiff's bad faith conduct because he did not oppose the underlying allegations); see also Geller v. Randi, 40 F.3d 1300, 1304 (D.C. Cir. 1994) ("We think it would be absurd to allow a party to concede an entire case by default while restricting the same party's ability to concede a motion for Rule 11 sanctions.").

Plaintiffs' Counsel advance the preposterous argument that ethical obligations and confidentiality principles bound them to comply with their clients' "instructions" to ignore this case, including Defendants' motion.  (FTR 1:49:15-1:49:30; ECF No. 25 at 3-4.)  Not so.  The New York Rules of Professional Conduct ("NYRPC") apply to attorneys practicing in the Eastern

District of New York.[9]  E.D.N.Y. Loc. Civ. R. 1.5(b)(5); <u>e.g.</u>, <u>In re Demetriades</u>, 58 F.4th 37, 51-54 (2d Cir. 2023).   NYRPC allowed Plaintiffs' Counsel to reveal confidential information as needed to defend themselves against the misconduct allegations in Defendants' motion.  <u>See</u> N.Y. R. Prof'l Cond. 1.6(b)(5); N.Y. R. Prof'l Con. 1.6 Comm. 10; <u>see also</u> <u>Demetriades</u>, 58 F.4th at 54 (relying on NYRPC and their comments).   NYRPC also <u>require</u> counsel to "correct a false statement of material fact or law previously made to the tribunal by the lawyer," like those identified in Defendants' motion, and allow counsel to use confidential information to do so.  N.Y. R. Prof'l Cond. 1.6(b)(3), 3.3(a).   NYRPC's requirement that "a lawyer shall abide by a client's decisions concerning the objectives of representation" is "[s]ubject to" those other NYRPC provisions.  N.Y. R. Prof'l Con. 1.2(a).  To be sure, NYRPC's grant of authority to clients operates "within the limits imposed by law and the lawyer's professional obligations."  N.Y. R. Prof'l Con. 1.2 Comm. 1; <u>see also</u> N.Y. R. Prof'l Con. 1.4(a)(5) (similar).  As the Second Circuit explained, "an attorney may not act as 'an unreflecting conduit through which the opinions or desires of a client are permitted to flow unchecked' or 'silently acquiesce to a client who demands that the attorney pursue measures in the litigation that conflict with applicable ethics provisions.'"  <u>In re Charges of Judicial Misconduct</u>, 465 F.3d 532, 548 (2d Cir. 2006) (quoting <u>Thomas v. Tenneco Packaging Co.</u>, 293 F.3d 1306, 1327 (11th Cir. 2002)) (ellipsis omitted); <u>see</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 753 n.6 (1983) (holding that it is the "attorney's duty" to "take professional responsibility for the conduct of the case").  Thus, Plaintiffs' Counsel's ethics argument holds no water.

---

[9]      NYRPC are codified at N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.  NYRPC are also available with official comments at <u>New York Rules of Conduct with Comments</u>, N.Y. State Bar Ass'n (Aug. 2, 2022) https://nysba.org/app/uploads/2024/02/20240226-Rules-of-Professional-Conduct-as-amended-6.10.2022.pdf.

### 6.   The Court Does not Find Iandolo Acted in Bad Faith

The Court does not find Iandolo acted in bad faith.  Iandolo's last involvement with the case was the filing of a stipulation to extend Defendants' time to answer the Complaint.  (State Ct. R. Part 2, ECF No. 1-3 at 101.)  That filing predated by thirty days the Amended Complaint and supplemental injunction motion that the Court, for the reasons explained above, finds sanctionable. (Compare id., with Am. Compl., ECF No 20-11, and Supp. Inj. Mot., ECF No. 20-12.)  Though Tufariello put Iandolo's name in the header of the Amended Complaint, Iandolo did not sign or file that document.  (ECF No. 20-11 at 1, 22.)  In fact, the Amended Complaint's certificate of service lists Iandolo alongside defense counsel as a person upon whom the Amended Complaint had to be and was served.  (Id. at 23.)  Furthermore, Tufariello acknowledged that she "took the case over" from Iandolo once she appeared.  (FTR 1:51:32-1:51:58.)  While Iandolo should have formally withdrawn from the case before ceasing to be involved with it, see NYRPC 1.16(d); N.Y. C.P.L.R. § 321(b); E.D.N.Y. Loc. Civ. R. 1.4, the Court does not find that he acted in bad faith.[10]

### 7.   The Court Will not Impose Sanctions for Failing to Respond to Discovery Demands and Court Orders

Defendants also seek sanctions because Plaintiffs failed to respond to discovery requests and the Court's Status Report Orders.  (See ECF No. 20-1 at 17-19).  Those requests are DENIED. "Rules 26(g) and 37 represent the principal enforcement power to punish discovery abuse."  Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 235-236 (2d Cir. 2020) (internal quotation marks omitted).  Other sanction authorities such as § 1927 "should serve only as a useful backstop against

---

[10]      Plaintiffs' Counsel insist that they could not move to withdraw because doing so would have caused "a material adverse effect on Plaintiffs' interests" in some unspecified way.  (ECF No. 25 at 4-5.)  That argument erroneously assumes N.Y. R. Prof'l Con. 1.6(c)(1) provides the only ethical basis to withdraw.  Instead, counsel may rely on any of the grounds in N.Y. R. Prof'l Con. 1.6(b)-(c) to withdraw, including where the client insists on presenting an unwarranted claim, fails to cooperate or otherwise renders representation unreasonably difficult, or insists on pursuing conduct that is illegal or prohibited by NYRPC.  See N.Y. R. Prof'l Con. 1.6(c)(6)-(7), (13).

discovery abuses that do not clearly violate Rules 26(g) and 37." <u>Id.</u> (internal quotation marks omitted).  In any event, Plaintiffs already suffered the consequences of their failure to participate in this case when the Court imposed dismissal for failure to prosecute.  (<u>See</u> May 4, 2023, Order Dismissing Case.)

### 8.  The Court Cannot Impose Sanctions for the Cancellation Proceeding

Defendants ask the Court to impose sanctions for Plaintiffs' filing of and conduct in the Cancellation Proceeding.  (ECF No. 20-1 at 18-19.)  That request is DENIED.  Defendants cite no authority for the Court to impose sanctions for conduct before TTAB.  In any event, the sanctions authority Defendants invoke requires misconduct in the case before this Court.  <u>See</u> § 1927 (allowing sanctions for misconduct that multiplies federal court proceedings); <u>Huebner</u>, 897 F.3d at 55 (explaining that § 1927 empowers federal courts to addresses misconduct "throughout the entire litigation" before them (internal quotation marks omitted)).  Further, TTAB is specifically empowered to impose sanctions or otherwise discipline counsel for misconduct before it.  <u>See</u> 37 C.F.R. §§ 2.120(h), 11.18(d), 11.20(a); <u>see also</u> <u>Carter v. ALK Holdings, Inc.</u>, 605 F.3d 1319, 1325 (Fed. Cir. 2010) ("A practitioner who fails to comply with these PTO standards may receive a suspension or disbarment." (citing 35 U.S.C. § 32)).

### E.    Attorney's Fees Under the Lanham Act

Defendants seek attorney's fees from Plaintiffs and Plaintiffs' Counsel under the Lanham Act.  (ECF No. 20-1 at 22.)  The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C.S. § 1117(a).  This provision allows the Court to award fees against a party and its counsel.  <u>See</u> <u>Motown Prods. v. Cacomm, Inc.</u>, 849 F.2d 781, 786 (2d Cir. 1988).

Defendants are prevailing parties.  To obtain that status, Defendants must have "achieve[d] some material alteration of the legal relationship" with Plaintiffs and "that change must also be judicially sanctioned."  Manhattan Review LLC v. Yun, 919 F.3d 149, 152-53 (2d Cir. 2019) (internal quotation marks omitted); see Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001).  Defendants meet that standard because the Court dismissed Plaintiffs' claims.  See CRST Van Expedited, Inc. v. EEOC, 578 U.S. 419, 431 (2016) (explaining that defendants prevail when the court rejects the claims against them, even for non-merits reasons); Manhattan Review LLC v. Yun, 919 F.3d 149, 153 (2d Cir. 2019) (same).

An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  4 Pillar Dynasty LLC v. N.Y. & Co., 933 F.3d 202, 215 (2d Cir. 2019) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)).  This analysis requires courts to use a "case-by-case exercise of their discretion, considering the totality of the circumstances."  Id. (quoting Octane Fitness, 572 U.S. at 554).  In doing so, "courts may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  Id. (quoting Octane Fitness, 572 U.S. at 554 n.6).

This is an exceptional case within the meaning of § 1117(a) as it relates to Tufariello.  The "exceptional case" standard is lower than the standard for granting sanctions.  See Octane Fitness, 572 U.S. at 555 ("[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.").  Thus, sanctionable bad faith litigation conduct is sufficient (but not

necessary) to render a case exceptional.  See id. ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."); Antetokounmpo v. Costantino, No. 21-CV-2198, 2021 WL 5916512, at *7 (S.D.N.Y. Dec. 15, 2021) ("Courts in this Circuit have found cases to be 'exceptional' under the Octane Fitness standard when the case was litigated in an unreasonable manner or in bad faith." (latter emphasis added)), report and recommendation adopted, 2022 WL 36232 (S.D.N.Y. Jan. 4, 2022).  Accordingly, the Court's conclusion that Tufariello undertook sanctionable conduct in knowingly bringing baseless Lanham Act claims suffices to make the case exceptional for purposes of awarding attorney's fees against her under the Lanham Act.  See supra Section III.D.2.

Original Plaintiffs' conduct likewise made this an exceptional Lanham Act case.[11]  A legal claim is frivolous or objectively unreasonable when it "has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands."  Star Mark Mgmt., 682 F.3d at 177 (internal quotation marks omitted).  Factual assertions are frivolous when they are "clearly baseless."  Livingston v. Adirondack Bev. Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation marks omitted).  Given these principles, "courts are more likely to award fees" under the Lanham Act "where a party knew or willfully ignored evidence of his claims' meritlessness."  Small v. Implant Direct Mfg. LLC, No. 06-CV-683, 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014), aff'd, 609 F. App'x 650 (Fed. Cir. 2015).  That is what happened here.  Original Plaintiffs falsely insisted that they used the marks in commerce when, in fact, they had not done so for approximately seven years.  (Compare Pastier Decl., ECF No. 20-2 ¶ 8 (confirming Original Plaintiffs' non-use of the marks), with Am. Compl. ECF No.  20-11 ¶¶ ¶¶ 14-15, 21, 40-41 (asserting Plaintiffs continued to use the marks in commerce), and Supp. Inj. Mot., ECF No 20-12

---

[11]     The Court does not address THP because, as explained above, it no longer exists as a matter of law.

at 10-12 (similar)).  The deficient Lanham Act claims premised on those misrepresentations warrant fee shifting.  See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 327 F. Supp. 3d 606, 643-44 (S.D.N.Y. 2018) (awarding attorney's fees under the Lanham Act based on litigation conduct, including taking "unreasonable" positions and making "untenable" arguments).

The Court reaches a different conclusion with respect to Iandolo.  As explained above, Iandolo's last involvement with the case was the filing of a stipulation to extend Defendants' time to answer the Complaint, which predated by thirty days the Amended Complaint that first asserted Lanham Act claims.  See supra Section III.D.6.  Accordingly, the Court sees no basis to conclude that Iandolo contributed to making this an exceptional Lanham Act case.

For the foregoing reasons, Defendants are entitled to attorney's fees under the Lanham Act jointly and severally from Original Plaintiffs and Tufariello.  See Motown, 849 F.2d at 786.

## F.    Costs

Defendants also seek costs from Plaintiffs and Plaintiffs' Counsel under the Lanham Act. (ECF No. 20-1 at 23.)  The Lanham Act allows "successful Plaintiffs" to recover costs under certain circumstances. § 1117(a) (emphasis added); e.g., RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc., 527 F. Supp. 3d 305, 330 (E.D.N.Y. 2021).  The Lanham Act therefore does not provide a basis to award costs to Defendants.  Alfwear, Inc. v. Mast-Jaegermeister US, Inc., No. 22-4020, 2023 WL 8232072, at *5 (10th Cir. Nov. 28, 2023).

Defendants also seek costs from Plaintiffs under Rule 54(d).  (ECF No. 20-1 at 13.)  That Rule provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d).  "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception."  Javier v. Deringer-Ney Inc., 501 F. App'x 44, 45 (2d Cir. 2012) (quoting Whitfield v. Scully, 241 F.3d 264, 270 (2d

Cir. 2001)).  As explained above, Defendants are the prevailing parties in this case.  Accordingly, Defendants are entitled to costs from Plaintiffs under Rule 54(d).

## G.    <u>Determining Attorney's Fees and Costs</u>

Defendants asked the Court to adjudicate liability for attorney's fees and costs before allowing the parties to address the amounts to award.  (<u>See</u> ECF No. 20-1 at 23.)  The Court will take that approach.  <u>See</u> Fed. R. Civ. P. 54(d)(2)(C); <u>Dietz v. Bouldin</u>, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases."); <u>see also, e.g.</u>, <u>L & L Wings, Inc. v. Marco-Destin, Inc.</u>, 756 F. Supp. 2d 359, 368 (S.D.N.Y. 2010) (adjudicating liability for attorney's fees and ordering separate briefing on the amount to award).

In making that request, Defendants invoked "the interests of judicial economy and conserving the parties' resources."  (ECF No. 20-1 at 23.)  Consistent with that interest, the Court encourages Defendants to seek attorney's fees only under § 1927.  Such an award would redress all of Tufariello's sanctionable conduct, which likely encompasses all attorney's fees Defendants reasonably incurred in this case after Tufariello filed the Amended Complaint.  <u>See</u> <u>supra</u> Section III.D; § 1927.  Pursuit of attorney's fees under the Lanham Act would yield a lesser recovery and require more effort from Defendants and the Court because the Court must, based on Defendants' submissions, "[l]imit[] Lanham Act recovery to Lanham Act work."  <u>Sleepy's LLC v. Select Comfort Wholesale Corp.</u>, 909 F.3d 519, 531 (2d Cir. 2018).  In other words, under § 1117(a), "[t]he prevailing party in a multi-claim case which includes both Lanham Act and non-Lanham Act counts should be entitled to attorney fees *only* for work expended in prosecuting or defending the Lanham Act counts."  <u>Id.</u> (internal quotation marks omitted).  The Second Circuit has recognized that apportioning attorney's fees incurred specifically for Lanham Act claims can be

"challenging" and require extensive analysis.  Id. (vacating order that "devoted significant time and care to describing the relevant legal standards and why the facts of this case render [Lanham Act] apportionment difficult" because it resulted in a "Gordian Knot" analysis).  At bottom, judicial economy and Defendants' financial interests may be better served if Defendants seek fees under only § 1927.

## IV.    CONCLUSION

As set forth above, the Court REJECTS the R&R; GRANTS IN PART and DENIES IN PART Defendants' motion for sanctions, attorney's fees, and costs; GRANTS Defendants' request to allow separate briefing to determine the amounts owed for attorney's fees and costs; and encourages Defendants to seek attorney's fees only under § 1927.

The Court sets the following briefing schedule regarding amounts owed for attorney's fees and costs. Defendants shall serve their opening brief by September 13, 2024.  Plaintiffs and Plaintiffs' Counsel shall serve any opposition briefs by September 27, 2024.  Defendants shall serve their reply brief and file all submissions by October 11, 2024.

Plaintiffs' Counsel shall serve a copy of this Memorandum & Order upon Plaintiffs and file proof of service by September 3, 2024.

**SO ORDERED.**

Dated:    August 29, 2024
          Central Islip, New York

                                                  (/s/ JMA)
                                        _____
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE